Kenneth L. KELLAR, et
al., Respondents,

v.

John E. VON HOLTUM,
et al., Appellants,

Grand Marais State Bank,
et al., Appellants.

No. CX–98–283.

Supreme Court of Minnesota.

Jan. 13, 2000.

As Amended on Denial of Rehearing
Feb. 29, 2000.

Thomas R. Thibodeau, Joseph J. Roby,
Jermone D. Feriancek, Johnson, Killen,

Thibodeau & Seiler, P.A., Duluth, for appellants Grand Marais State Bank and VH Bancorporation.

Martha A. Peterson, Gregory J. Bien, Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka, KS, Michael Berens, Kelly & Berens, P.A., Minneapolis, for appellants Von Holtum and La Vigne.

Richard A. Saliterman, Floyd E. Siefferman, Jr., Saliterman & Sieferman, P.C., Minneapolis, for respondents.

## OPINION

LANCASTER, Justice.

This appeal involves several questions relating to awards of attorney fees and costs and disbursements in civil litigation. We first address whether the trial court retained jurisdiction to consider awards of costs and disbursements and imposition of attorney fee sanctions after the conclusion of the appellate process. Next, we look to whether the appellants gave adequate notice of their intention to seek sanctions under Minn. R. Civ. P. 11 or Minn.Stat. § 549.21 (1996), *repealed and recodified at* Minn.Stat. § 549.211 (1998), to support the trial court's order to impose attorney fees as a sanction. Finally, we answer whether the trial court abused its discretion in awarding costs and disbursements. We hold that the trial court retained jurisdiction to award costs and disbursements and attorney fees incurred in the trial court. We further hold that the trial court erred in imposing attorney fees where appellant Grand Marais State Bank failed to give the required notice of its intention to seek sanctions. We affirm in part, reverse in part, and remand.

In July 1993, respondents Kenneth L. Kellar and Security State Agency of Aitkin, Inc. filed a bank charter application with the Minnesota Department of Commerce for a bank to be located in Grand Marais, Minnesota. Appellants John E. Von Holtum, Michael LaVinge, Grand Marais State Bank, and V.H. Bancorporation, Inc. opposed the bank charter application.[1] After a public hearing, the Department of Commerce granted Kellar the charter. In June 1995, Kellar commenced an action against appellants, alleging defamation, common law discrimination and unfair competition, restraint of trade, and abuse of process. Each of these claims was based on alleged actions and statements made in opposition to Kellar's bank charter application.

In October 1995, appellants filed a motion for judgment on the pleadings pursuant to Minn. R. Civ. P. 12.03. On January 10, 1996, the trial court granted the appellants' motion for judgment on the pleadings on Kellar's discrimination, unfair competition, and restraint of trade claims. In their motion for judgment on the pleadings, the appellants did not assert that Kellar pursued his claims in bad faith, and the trial court made no mention of bad faith on the part of Kellar.

In February 1996, Von Holtum moved for attorney fees and dismissal of Kellar's three remaining claims as sanctions for Kellar's failure to comply with an earlier discovery order and for bad faith pursuit of litigation in violation of Minn.Stat. § 549.21 (1996) and Minn. R. Civ. P. 11. Grand Marais joined Von Holtum's motion with respect to Kellar's failure to comply with the discovery order, but did not join Von Holtum in the motion for sanctions pursuant to Rule 11 or Minn.Stat. § 549.21 (1996).

1. For ease of discussion, Kellar and Security State Agency will be referred to collectively as Kellar; Von Holtum and LaVinge will be referred to collectively as Von Holtum; Grand Marais State Bank and VH Bancorporation will be referred to collectively as Grand Marais; and all appellants will be referred to collectively as appellants.

On June 26, 1996, as a sanction for Kellar's failure to comply with the discovery order and his violation of Minn. R. Civ. P. 11 and Minn.Stat. § 549.21 (1996), the trial court dismissed Kellar's two defamation claims, thereby leaving one remaining claim–abuse of process. In its order, the trial court did not expressly state that it was reserving judgment on the abuse of process claim or on sanctions related to the dismissed claims.[2]

On October 17, 1996, the trial court granted summary judgment for Von Holtum on Kellar's remaining abuse of process claim. Kellar appealed the trial court's dismissal of all of his claims, and the court of appeals affirmed. *See Kellar v. VonHoltum*, 568 N.W.2d 186 (Minn.App. 1997), *rev. denied* (Minn. Oct. 31, 1997).

On September 9, 1997, Grand Marais filed a motion with the trial court for taxation of costs and disbursements in the amount of $5,097.97. On October 1, 1997, Von Holtum filed a similar motion for costs and disbursements in the amount of $13,085.50. Then on November 14, 1997, two weeks after our denial of review concluded the appellate process, Grand Marais filed a motion seeking $45,721.45 in attorney fees as a sanction against Kellar pursuant to Minn.Stat. § 549.21 (1996) and Minn. R. Civ. P. 11. On December 2, 1997, Von Holtum joined Grand Marais' motion, seeking $58,864.90 in attorney fees.

On January 29, 1998, the trial court awarded costs in the amount of $4,922.19 to Grand Marais and $9,464.11 to Von Holtum. That same day, by separate order, the trial court concluded that it had continuing jurisdiction over sanctions, and awarded $75,000 in attorney fees jointly to Grand Marais and Von Holtum. In ordering sanctions, the trial court cited *Uselman v. Uselman*, 464 N.W.2d 130 (1990),

and referred to the need for a clear warning of potential sanctions. The trial court determined that Kellar had been given sufficient notice because he was "clearly put on notice as to the Court's concern for the need to back up the allegations of defamatory statements and related conduct by going beyond averments based on information and belief." The trial court noted that Kellar made a "reasonable inquiry" into the basis for the action prior to filing his complaint, but that he failed to satisfy his continuing duty to re-evaluate his claims as new information came to light throughout the discovery process.

Kellar appealed both January 29, 1998, orders, arguing that the trial court lacked jurisdiction to award costs and disbursements or impose sanctions. The court of appeals concluded that the trial court lacked jurisdiction to award attorney fees "after the entire appeals process had been completed" and reversed the award of attorney fees. The court of appeals further concluded that the trial court had jurisdiction to award costs and disbursements related to trial court expenses, and did not abuse its discretion in the amount of costs and disbursements awarded. However, the court of appeals concluded that the trial court had no jurisdiction to award costs and disbursements for the portion of costs and disbursements associated with the appeal on the merits and remanded to the trial court for exclusion of that portion of the award.

Von Holtum and Grand Marais sought review, and Kellar filed a conditional cross-petition for review. The issues raised by the parties on appeal are: (1) whether the trial court had jurisdiction to award costs and disbursements or attorney fee sanctions after completion of the appeal on the merits; (2) whether appellants provided adequate notice to support imposition of

---

2. On August 20, 1996, appellants also filed a motion for a protective order and for discovery sanctions. This motion was unrelated to

either Rule 11 or Minn.Stat. § 549.21 (1996), and thus was irrelevant to our determination of the issues before us.

sanctions; and (3) whether the trial court abused its discretion in awarding costs and disbursements. Appellants argue that Kellar was put on fair notice by the February 1996 motion and various subsequent court orders. Kellar asserts in his brief that the trial court abused its discretion in the amount of attorney fees awarded.

## I.

■ Jurisdiction is a question of law that we review de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ Relying on our decision in *Marzitelli v. City of Little Canada,* 582 N.W.2d 904 (Minn.1998), Kellar asserts that the trial court lacked jurisdiction to entertain motions for attorney fees or costs and disbursements. Kellar contends that the trial court's jurisdiction to hear motions for attorney fees and costs and disbursements "does not extend beyond the running of the time for appeal." *Id.* at 907.

Kellar's reliance on *Marzitelli* is misplaced. *Marzitelli* dealt specifically with the narrow issue of whether, following an appeal of a special proceeding governed by Minn. R. Civ.App. P. 103.03, a trial court has continuing jurisdiction to amend an underlying judgment once the time for appeal has expired. *Id.* at 906–07. *Marzitelli* is not controlling in this case. Collateral matters, such as motions for attorney fee sanctions and costs and disbursements, are independent of the underlying decision and do not seek to modify the underlying decision in any way. *See generally Spaeth v. City of Plymouth,* 344 N.W.2d 815, 825–26

(Minn.1984) (holding claim for attorney and expert fees independent of merits of litigation).

Kellar asserts that the trial court does not retain jurisdiction to consider collateral matters following the appellate process because the policy against piecemeal appeals is best accomplished by limiting the trial court's jurisdiction to hear motions for attorney fees and costs and disbursements. Kellar relies on *Overnite Transp. Co. v. Chicago Indus. Tire Co.,* 697 F.2d 789 (7th Cir.1983), to support this claim. In *Overnite,* the Seventh Circuit held that the trial court did not have jurisdiction to grant a motion for attorney fees filed after completion of an appeal. *See id.* at 793–94. The court determined that a motion for attorney fees is "inexorably bound to the underlying merits of the case," and concluded that allowing a party to bring a motion after completion of the appellate process would result in "delay and wasted effort." *Id.* at 793.

■ We do not agree. As we stated in *Spaeth,* we consider motions for attorney fee sanctions and costs and disbursements collateral to the merits of the underlying litigation. 344 N.W.2d at 825–26. Thus, there is likely to be little, if any, harm caused by waiting to resolve such collateral issues until the merits are resolved.[3] We therefore conclude that the trial court retained jurisdiction to consider appellants' motions for attorney fees and costs and disbursements, and reverse the court of appeals' decision to the contrary.

## II. A.

We next consider whether appellant Von Holtum gave Kellar sufficient required no-

---

**3.** Kellar also directs us to a recent Supreme Court decision that addressed the proper timing for an appeal of a sanction order. *See Cunningham v. Hamilton County, Ohio,* 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999). The Court found that to avoid piecemeal appeals a sanction order under Fed. R. Civ. Proc. 37(a) was not immediately appeal-

able outside the merits of the case. *See id.,* 527 U.S. 198, 119 S.Ct. at 1922. This is not, however, the issue before us. *Cunningham* dealt only with the issue of when a sanction order can be appealed and did not address when a court may award attorney fees as a sanction under Fed. R. Civ. Proc. 11 (the federal counterpart to Minn. R. Civ. Proc. 11).

tice of their intention to seek attorney fees as sanctions. The trial court awarded $75,000 in attorney fees jointly to all appellants. The court of appeals determined that the trial court lacked jurisdiction to award attorney fees, and thus did not address the issue of adequate notice.

■ We begin our analysis by reviewing the responsibilities of all attorneys involved in drafting and filing pleadings and motions. First of all, we must look at the standards of conduct established by our rules and statutes. Minnesota Rules of Civil Procedure 11 requires an attorney filing a pleading, motion, or other paper to sign the filed document, thereby certifying

> that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion or other paper is signed in violation of this rule, the court * * * shall impose upon the person who signed it, a represented party, or both, an appropriate sanction.

*Id.* Rule 11 thereby imposes "an affirmative duty * * * on counsel to investigate the factual and legal underpinnings of a pleading." *Uselman,* 464 N.W.2d at 142. Minnesota Statutes § 549.21, subd. 2 (1996) similarly provides for imposition of sanctions where a party asserting a claim has "acted in bad faith [or] asserted a claim or defense that is frivolous and that is costly to the other party." These are the standards by which attorneys engaged in civil litigation must abide.

■ The goal of both the statute and the rule is not to punish the offender or to shift fees, but to deter bad faith litigation. *Uselman,* 464 N.W.2d at 142. Adopting deterrence as the driving policy serves the purpose of protecting a party from the costs of having to defend oneself from bad faith litigation. In *Uselman,* we addressed this goal and the importance of notice of intent to invoke the rule and statute to impose sanctions. *Id.* We stated that with regard to the imposition of sanctions:

> [C]ertain minimum procedural guidelines must be established. First, the attorney or party must have fair notice of both the possibility of a sanction and the reason for its proposed imposition. Since one of the primary purposes of Rule 11 is to deter litigation abuse, this notice should be given as early as possible during the proceedings to provide the attorney and party the opportunity to correct future conduct. A policy of deterrence is not well served by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end. A proper sanction assessed at the time of the transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions. Only in very unusual circumstances will it be permissible for the trial court to wait until the conclusion of the litigation to announce that sanctions will be considered or imposed. Similarly, a party intending to seek sanctions should notify the court and other parties with specificity of that intention.

*Id.* at 143 (citations omitted). We went on to note that an "attorney or party should be given an opportunity to respond to the notice of a possible Rule 11 sanction." *Id.* at 144.

Timely notice of the intention to seek sanctions also serves the purpose of informing the trial court of anticipated issues, thereby allowing the trial court to resolve these issues in an efficient manner. Even though the trial court has continuing jurisdiction over such collateral matters,

"we strenuously urge the district courts either to rule on such claims as early as possible after entry of judgment on the merits or to not enter judgment on the merits until the fees issue has been finally resolved." *Spaeth,* 344 N.W.2d at 825. Such resolution by the trial court will "ensure that all aspects [of a case] come before the appellate court for disposition in one proceeding," thereby reducing the risk of piecemeal litigation. *Id.*

In *Uselman,* we determined that the trial court abused its discretion in awarding attorney fees. *See* 464 N.W.2d at 145. We noted that "the record demonstrate[d] significant factual and legal research undertaken" by the attorney against whom sanctions were sought. *Id.* at 141. Furthermore, neither the opposing party nor the court had given timely notice of the possible imposition of sanctions. *Id.* at 144. We further instructed trial courts "to tailor any sanctions to the unique facts of an individual case to accomplish the fundamental purpose of the rule—deterrence" and to "impose the least severe sanction necessary to effectuate the purpose of deterrence." *Id.* at 145.

■ Appellants assert that this case presents the type of "very unusual circumstances" referenced in *Uselman* where no notice of intention to give sanctions is required. *See id.* at 143. The court in *Uselman* determined such unusual circumstances were not present in that case, in part because of the factual and legal research undertaken by the attorney against whom sanctions were sought. *See id.* Although the trial court in this case determined that Kellar's claims were "not well grounded in fact," the trial court also found mitigating circumstances, including Kellar's efforts to determine the appropriateness of the litigation prior to its commencement. Thus, this is not one of those cases involving very unusual circumstances where notice to the allegedly offending party is not required.

■ We find that Von Holtum's February 1996 motion, which contained a request for sanctions pursuant to Rule 11 and section 549.21 (1996), gave adequate notice to Kellar. The trial court afforded Kellar sufficient opportunity to respond and imposed an obligation to correct their bad faith litigation.[4] Because Kellar did not avail itself of the chance to correct the litigation, attorney fees were properly awarded as a sanction of last resort.

We note that it is the primary responsibility of the parties seeking sanctions to furnish adequate notice. *Uselman,* however, does not impose a duty on parties to give repeated notice throughout the litigation process. Instead, *Uselman* makes clear that sanctions may be imposed for violations that occur before notice is given. We reaffirm this holding while recognizing that deterrence of bad faith litigation should remain the policy supporting sanctions.

■ The trial court has wide discretion to award the type of sanctions it deems necessary provided that fair notice has been given and the subject party has an opportunity to respond. *See Uselman,* 464 N.W.2d at 143. Perhaps the better practice by the trial court here would have been to reference the possibility of ordering further sanctions beyond dismissal. Nevertheless the notice provided by Von Holtum's February 1996 motion cannot be seen as terminated before the court made a final determination on sanctions.

In sum, we find that Von Holtum gave adequate notice by its February 1996 motion. Accordingly, we reverse the court of appeals and affirm the trial court's awarding of attorney fees to Von Holtum.

---

4. Von Holtum included a fifteen-page memorandum to their February 1996 motion that detailed their allegations of bad faith litigation by Kellar.

## II. B.

■ The awarding of attorney fees and costs to Grand Marais is a different matter. It is undisputed that November 14, 1997, was the first date that Grand Marais gave Kellar notice of its intention to seek sanctions for bad faith pursuant to Rule 11 or section 549.21 (1996). Grand Marais did not join in Von Holtum's February 1996 motion for sanctions. Kellar had no notice that Grand Marais believed further sanctions were appropriate following the resolution of Von Holtum's February 1996 motion for sanctions. Rather than seek to deter Kellar's pursuit of the remaining claims, Grand Marais waited until all appeals had been exhausted and then filed for sanctions. Imposition of such considerable sanctions upon a motion not made until the results of the appeal are known does not deter bad faith claims, but simply punishes those with unsuccessful claims.

We hold that because Grand Marais did not give notice of its intention to seek sanctions until after the conclusion of the appellate process, the trial court erred in awarding Grand Marais attorney fees as a sanction against Kellar. Accordingly, we reverse the trial court's award of attorney fees to Grand Marais.

## III.

■ The final issue before us is whether the trial court abused its discretion in its award of costs and disbursements. An award of costs and disbursements has generally been allowed within the sound discretion of the trial judge. *See Romain v. Pebble Creek Partners*, 310 N.W.2d 118, 123–24 (Minn.1981). As such, we review for an abuse of that discretion. *See Domtar, Inc. v. Niagara Ins. Co.*, 563 N.W.2d 724, 740 (Minn.1997). In this case, the court of appeals concluded that the trial court did not have authority to award costs and disbursements related to the appeal on the merits. Minnesota Rules of Civil Appellate Procedure 139.03 provides for the taxation of costs and disbursements at the appellate court level, and Minn. Special R. Practice 7 provides that it is the Clerk of the Appellate Courts who is responsible for taxation of appellate costs. Thus, we agree with the court of appeals' conclusion that the trial court abused its discretion in awarding costs and disbursements related to the appeal. We also agree with the court of appeals' conclusion that the trial court did not abuse its discretion in awarding costs and disbursements incurred at the trial court level. We therefore affirm the court of appeals as to the award of costs and disbursements.

Affirmed in part, reversed in part, and remanded.

PAGE, Justice (concurring in part and dissenting in part).

I agree with the court's conclusion that Von Holtum gave Kellar adequate notice by its February 1996 motion. However, I disagree with the court's conclusion that Kellar did not receive adequate notice of Grand Marais' intention to seek attorney fees as a sanction. On the facts presented by the record before us, I can only conclude that Kellar received fair notice of the possibility that Grand Marais would seek sanctions based on Kellar's pursuit of this litigation in bad faith. Von Holtum and Grand Marais' February 1996 motions for sanctions, pursuant to Minn.Stat. § 549.21 (1996), Minn. R. Civ. P. 11, and Minn. R. Civ. P. 37.02, provided that notice. Obviously, Kellar was not deterred in his pursuit of the litigation. Kellar's response was to vigorously oppose both motions. Even after the district court dismissed his defamation claims, Kellar continued to aggressively pursue his abuse of process and malicious prosecution claims.

Because Kellar had adequate notice as required by *Uselman v. Uselman*, 464 N.W.2d 130, 143 (Minn.1990), the district

court's award of attorney fees to Grand Marais as a sanction was not error.

STRINGER, Justice (concurring in part, dissenting in part).

I join in the concurrence/dissent of Justice PAGE.

GILBERT, Justice (concurring in part and dissenting in part).

I concur in the opinion of the majority, but I respectfully dissent from the majority's conclusion as it relates to Von Holtum's claim for attorney fees. I disagree with the basis of the court of appeals' decision but would affirm on two other grounds. First, Von Holtum made an untimely request for attorney fees. Second, there is no basis in the record or in the law to use the trial court's original sanction order as continuing notice for attorney fees when it only awarded dismissal of some counts without either granting or reserving judgment on attorney fees. The trial court did not observe the procedural safeguards required in *Uselman* and also entered contradictory findings. *See Uselman v. Uselman*, 464 N.W.2d 130, 144 (Minn.1990). Thus, the trial court abused its discretion. Such neglect of process does not effectuate the purpose of deterrence behind Minn. R. Civ. P. 11 and Minn.Stat. § 549.21 (1998).

The majority, acting as factfinder rather than as a reviewing court observing the abuse of discretion standard, finds that "sufficient required notice of [Von Holtum's] intention to seek attorney fees as sanctions" had been given in their February 1996 motion. The majority finds support for its conclusion by holding that *Uselman* does not impose a duty on parties to give repeated notice throughout the litigation process. In the alternative, the majority states, "nevertheless, the notice provided by Von Holtum's February 1996 motion cannot be seen as terminated be-

fore the court made a final determination on sanctions."

We granted accelerated review in *Uselman* primarily to address the question of the propriety of sanctions imposed against plaintiff's counsel because we found the issue to be of significance to both attorneys and litigants alike. *See Uselman*, 464 N.W.2d at 139. We felt that *Uselman* provided us with "an opportunity to explore the substantive and procedural intricacies of such awards." *Id.* Nine years later, the principles of *Uselman* are even more significant to the practicing bar and litigants because the trial courts have carefully incorporated the reasoning of *Uselman* in issuing awards for attorney fees. The majority now states that the trial court has "wide discretion" to award the type of sanctions it deems necessary. While it may be true that the trial court has some discretion in fashioning an appropriate sanction, *Uselman* also clearly put limits on this discretion. We require the court to seek out the "least severe sanction" and to observe certain procedural safeguards. *Id.* at 145. In concluding that notice was adequate, the majority opinion simply ignores how the trial court dealt with the initial motion for attorney fees and costs and what effect such action would have on the notice to the parties.

This new rule of law announced by the majority is contrary to what we held in *Uselman*:

> Finally, it was incumbent upon the first pretrial judge to award sanctions *at the time of the claimed abuse * * *.* We observe that defendants collectively brought five motions for summary judgment or dismissal before trial and that, while the court narrowed the issues, it did allow the plaintiffs to proceed to trial. The party who survives these motions with the major claims intact should not be subject to sanctions after trial predicated on the surviving claims.

*Id.* at 144 (emphasis added).

A careful look at the facts in this case leads to the conclusion that "fair notice of

both the possibility of a sanction and the reason for its proposed imposition" was not given and that "minimum procedural guidelines" were not followed. *Id.* at 143. Although Von Holtum initially sought attorney fees in a February 22, 1996 motion, the trial court did not grant fees at that time, nor did it reserve judgment on that issue. To the contrary, the trial court ordered dismissals, sanctions other than attorney fees, and was clearly mindful of the *Uselman* precedent. In its April 26, 1996 order, the court held that "under these circumstances, the court views its dismissal of the claims as the least restrictive sanction to effectuate Rule 11's purpose of deterrence." Even though attorney fees had been requested, the court failed to mention attorney fees or even reserve judgment on that issue.

On November 28, 1997, Von Holtum filed a new notice of motion for attorney fees pursuant to Rule 11 and Minn.Stat. § 549.21 after the trial court process had ended, the court of appeals had affirmed a dismissal of the plaintiff's complaint, and we had denied review of that decision. This motion made absolutely no reference to the prior court disposition or the prior request for attorney fees.

The trial court's January 29, 1998 decision to award sanctions must be viewed in the context of these prior proceedings. Focusing on the issue of notice, the trial court reasoned that "with the issuance of the order on these first dispositive motions, the plaintiffs were clearly put on notice as to the court's concern for the need to back up the allegations of defamatory statements and related conduct by going beyond mere averments based on information and belief." However, the April 26, 1996 order failed to mention attorney fees or even reserve judgment on that issue. Furthermore, from the parties' perspective, the order clearly resolved all issues pending at that point in time relating to sanctions when the court characterized its dismissal of some of the counts as being the "ultimate sanction."

Additionally, there was no award of attorney fees "at the time of the claimed abuse" in this case contrary to our *Uselman* directive. Instead, the trial court waited 19 months to award fees after initially denying the attorney fees request. Then, it only did so based on a new motion by Von Holtum after the first round of the appellate process had been completed in August 1997.

As a part of the court's award of sanctions, it also found that "[i]t is clear that the plaintiffs' attorneys undertook significant efforts to determine the appropriateness of the litigation prior to the commencement thereof" and held that those efforts would be considered "a factor in mitigation." On the same date that the court awarded attorney fees, it also awarded costs pursuant to a companion order. In that memorandum order, the trial court held as follows:

> The court does not suggest that the conduct of either at any time in such procedural disputes and the resultant numerous motions, countermotions and responsive motions, was by any measure inappropriate but notes that it not only increased each parties' legal fees and as well increased expenses that are appropriately treated as disbursements.

While at the same time assessing attorney fees for the failure to reexamine positions during litigation, the court did not find any measures taken by the plaintiffs to be inappropriate. The sanction imposed is inconsistent with the findings of the court.

Rather than retaining jurisdiction or taking the attorney fees request under advisement until the case had concluded, the trial court did just the opposite. The primary purpose of sanctions, deterrence, had been lost when all issues were fully adjudicated in the April 1996 order. As we stated in *Uselman,* "a policy of deter-

rence is not well served by tolerating abuses during the course of the action and then punishing the offender after the trial is at an end. The proper sanction assessed at the time of the transgression will ordinarily have some measure of deterrent effect on subsequent abuses and result in sanctions." *Id.* at 143 (internal citations omitted). The requirement of fair notice of both the possibility of a sanction and the reason for its imposition has not been adhered to by the majority. Now, after losing an initial request for attorney fees and the "ultimate sanction" of dismissal has been awarded, a party may wait out the appellate process, and if successful, may then initiate a new motion for attorneys fees. Both the principles of deterrence and fair notice carefully articulated in *Uselman* have been eliminated in this context.

PAUL H. ANDERSON, Justice (concurring in part and dissenting in part).

I join in the concurrence/dissent of Justice GILBERT.