Richard **GIBSON, et al., Respondents,**

v.

**COLDWELL BANKER BURNET, et al., Defendants,**

**Lind, Jensen, Sullivan & Peterson, P.A., Appellant.**

**No. C4–02–1385.**

Court of Appeals of Minnesota.

April 8, 2003.

Jeffrey E. Grell, Leonard, Street and Deinard, P.A., Minneapolis, MN, for respondents.

Richard A. Lind, Paul C. Peterson, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellant.

Considered and decided by
SCHUMACHER, Presiding Judge,
WILLIS, Judge, and ANDERSON, Judge.

## OPINION

WILLIS, Judge.

Appellant law firm challenges the district court's imposition of a Minn. R. Civ. P. 11 sanction. By notice of review, respondents contend that the sanction is an insufficient deterrent against further litigation abuses by appellant. Because respondents failed to follow the 21–day safe-harbor provision of Minn. R. Civ. P. 11.03(a)(1), we conclude that the district court abused its discretion and reverse the imposition of the sanction.

## FACTS

In the fall of 1997, respondents Richard and Cheryl Gibson owned a house in Minneapolis, and from that time until the spring of 1999, they were involved in a dispute over the potential sale of the house to Jo Davison. In the real-estate transaction, the Gibsons were represented by real-estate agent Fran Davis, and Davison was represented by real-estate agent Keni Johnson; both agents worked for the firm

Coldwell Banker Burnet ("Coldwell"). The transaction fell through, and the Gibsons eventually brought a lawsuit alleging, inter alia, breach of fiduciary duty against Davis and Coldwell, who were represented by appellant law firm Lind, Jensen, Sullivan & Peterson ("Lind Jensen").

In the course of their business relationship with Davis, the Gibsons received a document from Coldwell entitled "Agency Relationships in Real Estate Transactions," which stated that a "Seller's broker owes to the Seller the fiduciary duties described below." The duties described are loyalty, obedience, disclosure, confidentiality, reasonable care, and accounting.

In October 1997, Davison offered to buy the Gibsons' house for $350,000, and a purchase agreement was drafted. The Gibsons wanted to accept what they considered to be a good offer but also wanted to be certain that before the transaction closed they had another suitable home to move into. The Gibsons thus agreed that Davis would draft an addendum to the purchase agreement that provided that the Gibsons would have three weeks "from acceptance of the purchase agreement to verify that they can find a home of their choice in the time period allowed for closing."

The Gibsons and Davis had different understandings about the legal effect of the addendum. In discussions with Davis, the Gibsons stressed that the addendum was supposed to ensure that if they could not find a suitable home within three weeks, they would be under no obligation to sell the house to Davison. But in a deposition taken on January 24, 2001, Davis admitted that at the time she drafted the addendum, she knew that only the execution of a cancellation agreement could accomplish this result:

> Q. Did you believe that the purchase agreement expired automatically after the three weeks had ended and the Gibsons hadn't found a new house?
>
> A. I didn't think it expired automatically, but again I thought there was clear understanding among everybody after the three weeks, we hadn't found a house, we would continue to look, and if in fact they found a house, then we would make appropriate modifications to the purchase agreement.
>
> Q. So it was always your opinion that a cancellation agreement would need to be signed in order to terminate that purchase agreement with Jo Davison?
>
> A. Well, a cancellation [agreement] would have to be signed in order to release [Davison's] earnest money. That is our procedure at the office.
>
> Q. Did you ever inform the Gibsons of that procedure?
>
> A. It never came up.
>
> Q. You never informed them of the need for a cancellation agreement?
>
> A. Not that I recall.
>
> * * * *
>
> Q. Did you consider the Gibsons to be bound by that purchase agreement?
>
> A. I did consider the purchase agreement to be effective because we hadn't signed a cancellation.
>
> Q. Did you tell the Gibsons that they needed to sign a cancellation agreement to render that purchase agreement ineffective?
>
> A. I don't believe we had that discussion at that time.
>
> Q. Before that point in time?
>
> A. I don't remember a specific discussion.

The Gibsons and Davison signed the purchase agreement and addendum. Clos-

ing was scheduled for June 1998, and Davison paid $5,000 in earnest money. In October 1997, the Gibsons sent Davis a letter stating that they were unable to find another home and were not prepared to go forward with Davison's offer. In November, Johnson (Davison's agent) drafted a second addendum, which Davison signed, that left the closing date open. Johnson forwarded the second addendum to Davis, but Davis failed to discuss it with the Gibsons. From this time on, Davison was under the impression that the Gibsons still intended to complete the sale, even though no closing date was set.

In July 1998, the Gibsons finally learned from Davis that a cancellation agreement was necessary to terminate the transaction. But when Davis drafted a cancellation agreement in May 1999, Davison refused to sign and instead threatened to sue the Gibsons to enforce the purchase agreement. Davison then offered to settle the matter for $10,000. The Gibsons asked Coldwell either to pay the $10,000 or to reimburse the Gibsons for the cost of any settlement, but Coldwell did not agree to either alternative. In April 2000, Davison withdrew her settlement offer and commenced a lawsuit against the Gibsons, alleging breach of the purchase agreement. The Gibsons ultimately settled the claim by paying Davison $5,000, but only after incurring approximately $9,000 in attorney fees.

In June 2000, the Gibsons commenced this lawsuit against Davis and Coldwell[1] alleging, inter alia, breach of fiduciary duty and fraudulent misrepresentation; Davis and Coldwell served their answer on or about July 21, 2000, denying the claims for breach of fiduciary duty and fraudulent misrepresentation. In June 2001, after

Davis's deposition in January, the Gibsons received the district court's permission to amend their complaint to add a claim for punitive damages against Davis and Coldwell. In their answer to the amended complaint, which was signed by a Lind Jensen attorney, Davis and Coldwell again specifically denied that they breached their fiduciary duties.

On November 6, 2001, approximately one week before the trial began, the Gibsons' attorney sent a letter to the district court stating that the Gibsons were entitled to recover their attorney fees "as a matter of equity." The letter also stated that "regardless of the outcome of the trial, the Gibsons may seek" attorney fees through posttrial motions under Minn. R. Civ. P. 11 and Minn.Stat. § 549.211 (2000). The district court "rejected" the Gibsons' request for an equitable award of attorney fees but stated on the record on November 13, the day the trial began, that rule 11 sanctions were "by no means precluded" in the case.

In verdicts rendered on November 19 and 21, 2001, a jury found that (1) Davis and Coldwell breached their fiduciary duties to the Gibsons, (2) Davis committed fraudulent misrepresentation, (3) the Gibsons were entitled to $14,702 in compensatory damages from Davis and Coldwell, and (4) the Gibsons were entitled to $9,000 in punitive damages from Davis.

After the verdicts, the Gibsons moved the district court for sanctions under Minn. R. Civ. P. 11 and Minn.Stat. § 549.211, claiming that they had incurred more than $100,000 in attorney fees while prosecuting claims that Davis and Coldwell frivolously denied. The Gibsons' motion was filed and

---

1. Johnson was named initially as a defendant in this lawsuit but was dismissed before the conclusion of the trial.

served on the same day, December 20, 2001.

The district court granted the motion, concluding (1) that the denial of the claim of breach of fiduciary duty in the amended answer was presented for an improper purpose, was not warranted by the law or by a nonfrivolous argument for extension of the law, and was thus in violation of Minn. R. Civ. P. 11.02; (2) that the Gibsons' November 6 letter provided adequate notice of an intention to seek rule 11 sanctions; (3) that the Gibsons' failure to follow the 21–day safe-harbor provision of Minn. R. Civ. P. 11.03(a)(1) was harmless because correction of the amended answer was no longer possible; and (4) that sanctions were warranted against both Lind Jensen and Coldwell for attorney fees incurred after November 6. The district court thus ordered Lind Jensen and Coldwell to pay $20,000 each in rule 11 sanctions to the Gibsons.[2]

Lind Jensen appeals, arguing that the district court abused its discretion (1) by concluding that the firm's conduct violated rule 11, (2) by imposing a sanction when the Gibsons failed to follow the 21–day safe-harbor provision, (3) by imposing a monetary sanction, and (4) by imposing an excessive sanction. By notice of review, the Gibsons ask this court to remand this matter to the district court with instructions to increase the sanction on the ground that Lind Jensen's conduct on appeal shows that the current $20,000 sanction has had no deterrent effect.

## ISSUE

■ Did the district court abuse its discretion by imposing a sanction under Minn. R. Civ. P. 11?

## ANALYSIS

■ We will reverse a district court's decision to impose sanctions under Minn. R. Civ. P. 11 only if the district court abused its discretion. *See Uselman v. Uselman*, 464 N.W.2d 130, 145 (Minn. 1990). Cases interpreting Fed.R.Civ.P. 11, though not binding on this court, provide valuable guidelines for understanding the purpose and application of Minn. R. Civ. P. 11. *Id.* at 142.

### A. Conduct

■ Lind Jensen argues that its conduct in this lawsuit did not violate Minn. R. Civ. P. 11 and therefore did not warrant a sanction. By signing and submitting an answer, an attorney certifies that, to the best of his or her knowledge or belief, formed after a reasonable inquiry, (1) the answer is not being presented for any improper purpose, (2) the claims or defenses asserted in the answer are either warranted by existing law or by a nonfrivolous argument for the modification of existing law, (3) the allegations or factual contentions in the answer either have evidentiary support or are likely to have evidentiary support after further investigation or discovery, and (4) the denials of factual contentions in the answer are warranted by the evidence or are reasonably based on a lack of information and belief. Minn. R. Civ. P. 11.02. Sanctions under rule 11 should not be imposed when an attorney has an "objectively reasonable basis for pursuing a factual or legal claim or when a competent attorney could form a reasonable belief [that] a pleading is well-grounded" in fact and law. *Uselman*, 464 N.W.2d at 143.

---

**2.** Although the motion was brought under both Minn. R. Civ. P. 11 and Minn.Stat. § 549.211, the district court noted that its analysis would be the same under the statute as under the rule and thus provided only a rule-based analysis of the motion.

A fiduciary relationship exists when one party places its trust and confidence in the other. *Target Stores, Inc. v. Twin Plaza Co.*, 277 Minn. 481, 499, 153 N.W.2d 832, 844 (1967). Here, the Gibsons wanted to accept Davison's offer but did not want to have to sell their house before finding another acceptable home. Accordingly, the Gibsons repeatedly sought assurance from Davis that the language added to the purchase agreement, which requested three weeks from acceptance of the purchase agreement to find a suitable home, would have the effect the Gibsons desired. The Gibsons, therefore, placed their trust and confidence in Davis to advise them as to the effect of the purchase agreement, as amended. But as she admitted in her deposition, Davis knew, but did not inform the Gibsons, that only an executed cancellation agreement could terminate the purchase agreement in the event that the Gibsons could not find another home. Thus, Davis essentially admitted in her deposition that she breached her fiduciary duty to the Gibsons.

■ In light of Davis's deposition testimony, the denial in Coldwell and Davis's answer to the amended complaint of the Gibsons' claim of breach of fiduciary duty (1) was not warranted by existing law or by a nonfrivolous argument for the modification of existing law and (2) was not warranted on the evidence. *See* Minn. R. Civ. P. 11.02(b), (d). We cannot conclude that after its client admitted the elements of breach of fiduciary duty, Lind Jensen could continue to have an objectively reasonable basis for denying the claim.

■ Lind Jensen argues that it is an attorney's job to be a "zealous advocate" and that to require an attorney to ensure that a denial has legal and factual support would make an attorney the "finder of fact." But this is essentially what rule 11 does: it imposes on counsel an "affirmative duty" to investigate the factual and legal underpinnings of a pleading. *Uselman*, 464 N.W.2d at 142; *see also* Fed.R.Civ.P. 11 1993 advisory comm. cmt. (stating that rule 11 requires attorneys and pro se litigants "to 'stop-and-think' before initially making legal or factual contentions"). Here, Lind Jensen had nothing to investigate; at least one of its attorneys was present at Davis's deposition and, thereafter, the firm knew that there was no legal or factual basis for denying the Gibsons' claim for breach of fiduciary duty.

Thus, the district court did not abuse its discretion by concluding that Lind Jensen's conduct violated Minn. R. Civ. P. 11.02.

### B. Notice

Lind Jensen contends that the district court abused its discretion by imposing sanctions even though the Gibsons did not give them the required notice of their intent to seek rule 11 sanctions. Before July 2000, when Minn. R. Civ. P. 11.03 was added, the controlling authorities with respect to the notice required for rule 11 sanctions were *Uselman v. Uselman*, 464 N.W.2d 130 (Minn.1990), and *Kellar v. Von Holtum*, 605 N.W.2d 696 (Minn.2000). In these decisions, the supreme court provided two "minimum procedural guidelines" for the imposition of rule 11 sanctions. *Kellar*, 605 N.W.2d at 701; *Uselman*, 464 N.W.2d at 143.

First, the nonmoving party should be given "fair notice of both the possibility of a sanction and the reason for its proposed imposition." *Uselman*, 464 N.W.2d at 143 (citation omitted). The moving party must notify both the nonmoving party and the court "with specificity" of an intention to seek sanctions, and the notice should be given "as early as possible during the proceedings to provide the attorney and party the opportunity to correct future conduct."

*Id.; see also Kellar,* 605 N.W.2d at 702 (stating that rule 11 requires "timely notice"). But in *Kellar,* the supreme court stated that *Uselman* did not "impose a duty on parties to give repeated notice throughout the litigation process." 605 N.W.2d at 702.

Second, "the attorney or party should be given an opportunity to respond to the notice of a possible Rule 11 sanction." *Uselman,* 464 N.W.2d at 144 (citation omitted). This procedural guideline is satisfied by providing the nonmoving party with an opportunity for a hearing on the record. *Id.* The supreme court has also stated that only in "very unusual circumstances will it be permissible for the trial court to wait until the conclusion of the litigation" to decide that sanctions will be imposed. *Id.* at 143.

Under the rule as it existed before July 2000, the Gibsons' November 6 letter and the district court's November 13 statement on the record may have provided sufficient notice to Lind Jensen of an intention to seek rule 11 sanctions. Both came before or, in the case of the November 13 statement, at the start of trial, giving Lind Jensen some, albeit little, time to withdraw denial of the Gibsons' claim for breach of fiduciary duty.

But in July 2000, rule 11 was amended to "conform completely to the federal rule." Minn. R. Civ. P. 11 2000 advisory comm. cmt. This amendment took effect after both *Uselman* and *Kellar* were decided. The rule now provides:

> A motion for sanctions under this rule * * * shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is

not withdrawn or appropriately corrected.

Minn. R. Civ. P. 11.03(a)(1). An identical provision was added to the federal rule in 1993. *See* Fed.R.Civ.P. 11(c)(1)(A). The required 21–day waiting period has been described as a "safe harbor" provision. *See* Fed.R.Civ.P. 11 1993 advisory comm. cmt.

■ We decline to decide to what extent the 2000 amendment supersedes the minimum procedural guidelines set forth in *Uselman* and *Kellar. See* Minn. R. Civ. P. 11 2000 advisory comm. cmt. (stating that courts and practitioners should continue to be guided by *Uselman* ). But we conclude that Minn. R. Civ. P. 11.03(a)(1) independently requires that a party seeking sanctions serve its motion on the nonmoving party, wait for 21 days, and, if the challenged material has not been withdrawn or corrected by then, file the motion for sanctions in the district court. *See id.* (stating that the advisory committee intended that the revised rule 11 "would modify the *procedure* for seeking sanctions, but would not significantly change the availability of sanctions or the conduct justifying the imposition of sanctions" (emphasis added)); 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 11.6 (4th ed.2002) (stating that rule 11.03(a)(1) "imposes an additional requirement that should be enforced without regard to *Uselman's* lesser requirement of mere notice"). If the moving party does not follow the procedure provided in rule 11.03(a)(1), the motion for sanctions must be rejected. *See Tompkins v. Cyr,* 202 F.3d 770, 788 (5th Cir. 2000); *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 384 (6th Cir.1997); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328–29 (2d Cir.1995); Herr & Haydock, *supra,* § 11.6; 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337 (Supp.2002).

■ The Gibsons' motion was filed and served on the same day, December 20, 2001, and thus did not comply with the 21–day safe-harbor provision of Minn. R. Civ. P. 11.03(a)(1). Nonetheless, the district court concluded that any failure to follow the safe-harbor provision was harmless because the trial was over and Lind Jensen could not withdraw the denial. But authorities interpreting the federal rule state that motions for sanctions brought after the conclusion of the trial must be rejected precisely because the offending party is "unable to withdraw the improper papers or otherwise rectify the situation." Wright & Miller, *supra*, § 1337; *see also* Fed.R.Civ.P. 11 1993 advisory comm. cmt. (stating that given the safe-harbor provision, a party cannot delay serving its rule 11 motion until conclusion of the case or "judicial rejection of the offending contention"); *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir.1998).

■ The Gibsons had no excuse for not following the 21–day safe-harbor provision of rule 11.03(a)(1). The amended answer was served on or about July 26, 2001, the jury rendered its verdicts on November 19 and 21, 2001, and the Gibsons filed and served their motion for sanctions on December 20, 2001. The Gibsons thus had four months between service of the amended answer and the dates of the jury's verdicts in which to serve on Lind Jensen a motion for rule 11 sanctions. The Gibsons' attorney claims that he decided not to seek rule 11 sanctions during this four-month period because a Lind Jensen partner told him that evidence supporting the denial of the claim for breach of fiduciary duty was forthcoming. But this court "may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988) (cita-

tion omitted). There is no evidence in the record supporting the Gibsons' attorney's claim that he relied on representations made by a Lind Jensen partner, and we will not consider this claim in making our decision here.

We therefore conclude that the district court abused its discretion by imposing sanctions when the Gibsons failed to follow the 21–day safe-harbor provision of Minn. R. Civ. P. 11.03(a)(1).

*C. Sanction*

■ Finally, Lind Jensen challenges the sanction that the district court imposed, arguing (1) that the district court should have imposed a nonmonetary sanction and (2) that the amount of the monetary sanction was excessive. The "imposition of sanctions is mandatory" if Minn. R. Civ. P. 11 has been violated. *Uselman*, 464 N.W.2d at 142. The "fundamental purpose" of imposing sanctions is deterrence. *Id.* The district court has "wide discretion" to award the type of sanctions it deems necessary "provided that fair notice has been given and the subject party has an opportunity to respond." *Kellar*, 605 N.W.2d at 702.

■ The rule authorizes the imposition of both monetary and nonmonetary sanctions. *See* Minn. R. Civ. P. 11.03(b). Available nonmonetary sanctions include reprimanding the offending attorney or ordering continuing legal education. *Uselman*, 464 N.W.2d at 145. Although we recognize that the supreme court has stated that "the least severe sanction necessary to effectuate the purpose of deterrence" ought to be imposed, *id.* (citation omitted), we see no reason to conclude that an award of monetary sanctions here was not a proper exercise of the district court's wide discretion.

Lind Jensen also maintains that the district court abused its discretion by ordering a sanction that exceeds the amount of the Gibsons' attorney fees caused "directly and unavoidably" by the violation of rule 11. Even assuming that Lind Jensen is correct with respect to the amount of attorney fees, this is not the standard in Minnesota for assessing the propriety of a rule 11 sanction. Instead, the district court has discretion to impose a sanction in an amount sufficient to deter future litigation abuse, and we see no reason to conclude that a monetary sanction in the amount of $20,000 was not within the district court's wide discretion.

Although we agree with the district court that Lind Jensen's conduct violated rule 11 and we do not take issue with the district court's calculation of the sanction, we nonetheless reverse imposition of the sanction because the Gibsons did not satisfy the 21–day safe-harbor provision of rule 11.03(a)(1). Accordingly, we reject the Gibsons' request, raised by notice of review, that we remand this matter to the district court with instructions to increase the amount of the sanction.

## DECISION

The district court abused its discretion by imposing a sanction under Minn. R. Civ. P. 11 when the moving party failed to follow the 21–day safe-harbor requirement of Minn. R. Civ. P. 11.03(a)(1).

**Reversed.**