**James Robin ROGERS, Plaintiff,**

v.

**AC HUMKO CORP., et al., Defendants.**

**No. 98–2373–M1/V.**

United States District Court,
W.D. Tennessee,
Western Division.

June 25, 1999.

Hite McLean, Jr., Law Offices of Hite McLean, Jr., Memphis, TN, for James Robin Rogers, plaintiff.

Stuart A. Wilson, Shuttleworth Wilkinson & Wilson, Memphis, TN, Thomas H. Wilson, Christopher V. Bacon, Vinson & Elkins, Houston, TX, for AC Humko Corp, defendant.

David A. Thornton, Kimberly D. Brown, Armstrong Allen Prewitt Gentry, Johnston & Holmes, Memphis, TN, for Cigna Healthcare of Tennessee, Inc., defendant.

## ORDER ON DAMAGES

McCALLA, District Judge.

A four-day trial was held in this matter in February, 1999. The trial was limited to issues of Defendant A.C. Humko's liability to Plaintiff James Robin Rogers in connection with his termination under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §§ 621–634 and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 to 1004, as well as under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654.[1]

The jury returned a verdict finding in favor of Defendant on Plaintiff's ADEA claim and pendent state law claim. However, the jury found by a preponderance of the evidence that Defendant's termination of Plaintiff violated the FMLA as the termination was found to be in retaliation for Plaintiff taking leave protected by the Act. Jury resolution of the issue of damages was waived by the parties. The Court held a damages hearing on Friday, April 23, 1999. Two witnesses were heard, Deborah Welch and Plaintiff, and the Court accepted various exhibits into evidence.

### Background

Plaintiff was actively employed with Defendant until April 25, 1997. On that date, Plaintiff visited a doctor because of a serious health condition which involved his legs. Upon advice of his doctor, Plaintiff applied for short term disability leave. Plaintiff was placed on short term disability leave as of April 28, 1997. Defendant terminated Plaintiff on May 6, 1997 in retaliation for his taking leave protected by the FMLA, as found by the jury.[2]

Plaintiff was on sick leave or short term disability until September 6, 1997, during which time he continued to receive his full salary and benefits. From that date until October 26, 1997, Plaintiff received short term disability in the amount of two-thirds of his $77,000 base pay at the time of his termination. After October 26, 1997, Plaintiff began receiving long-term disability benefits under Defendant Humko's Long Term Disability Plan (LTDP) in the amount of sixty percent of his base pay. On December 5, 1998, the Social Security Administration determined that Plaintiff was entitled to monthly disability benefits as of October, 1997. As Defendant Humko's LTDP required an offset for any Social Security award of benefits, Plaintiff's LTDP benefits were reduced accordingly so that Plaintiff's overall benefits remained constant.

Plaintiff had successful surgery for his serious health condition in December, 1998, and has recuperated from the surgery. While he continues to suffer from some pain, Plaintiff does not presently have a serious health condition.

### Discussion

For Defendant's retaliatory discharge, Plaintiff seeks back pay, prejudgment interest, and liquidated damages, reinstatement or front pay, and compensatory damages for emotional distress.[3] For Defendant allegedly presenting an affidavit in bad faith in support of a motion for

1. Plaintiff has a separate ERISA claim against Defendant CIGNA Healthcare of Tennessee, Inc. which is not addressed in this Order.

2. Throughout the time following Plaintiff's termination, Defendant has continued to treat Plaintiff as a current employee on disability. Specifically, Defendant continued making its contributions for Plaintiff's health insurance premiums after his termination.

3. Plaintiff has submitted a separate petition for costs and attorneys' fees. The issue of Plaintiff's costs and attorneys' fees will be addressed in a separate Court order.

summary judgment, Plaintiff seeks sanctions under Federal Rule of Civil Procedure 56(g). Each sought relief is addressed in turn.

### Plaintiff's Relief for Defendant's Retaliation

The twin purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons" in a manner "that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(1)–(3) Among the findings prompting the Act was Congress's belief that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4).

Under the FMLA, an eligible employee is permitted up to twelve weeks of unpaid leave during any 12–month period due to a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).[4]

Upon completion of FMLA leave, the FMLA provides that an employee shall be restored to the position held when the leave commenced or to an equivalent position. *See* 29 U.S.C. § 2614(a)(1). However, implementing regulations promulgated by the U.S. Department of Labor provide that "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214(b); *see also Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 544 (1st Cir. 1999); *Parker v. Sony Pictures Entertainment, Inc.,* 19 F.Supp.2d 141, 153 (S.D.N.Y.1998); *Watkins v. J & S Oil Co., Inc.,* 977 F.Supp. 520, 523 (D.Me.1997); *Voskuil v. Environmental Health Ctr.—*

*Dallas,* No. 3:96–CV–0683–D, 1997 WL 527309, at *9 (N.D.Tex. Aug.18, 1997); *Beckendorf v. Schwegmann Giant Super Markers, Inc.,* No. 95–3822, 1997 WL 191504, at *3 (E.D.La. Apr.21, 1997); *Soodman v. Wildman, Harrold, Allen & Dixon,* No. 95 C 3834, 1997 WL 106257, at *8 (N.D.Ill. Feb.10, 1997); *Urbano v. Continental Airlines, Inc.,* No. H–95–3508, 1996 WL 767426, at *4 (S.D.Tex. Nov.1, 1996).

The FMLA states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). In particular, "[a]n employer is prohibited from discriminating against employees ... who have used FMLA leave." 29 C.F.R. § 825.220(c). In this case, the jury's verdict establishes that Defendant terminated Plaintiff because he took leave protected by the FMLA, a violation of 29 U.S.C. § 2615(a)(2).

With regard to damages for a violation of the FMLA, the Act provides:

(a) Civil action by employees

(1) Liability

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—

(A) for damages equal to—

(i) the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

---

4. An employee has the right, and an employer may require the employee, to use accrued vacation or personal leave for FMLA purposes. *See* 29 U.S.C. § 2612(d)(2)(A) and (B).

(ii) the interest on the amount described in · clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617.

Defendant argues that despite its retaliatory discharge in violation of the FMLA, any damages awarded to Plaintiff should be limited since, as argued by Defendant, Plaintiff could not have returned to work July 22, 1997, the day after Plaintiff's 12 weeks of FMLA leave, because of his continuing serious health condition.

In response, Plaintiff asserts that had he been offered his old job back, he could have returned to full-time work with certain concessions which had already been provided him by Humko prior to his termination. These concessions included the ability to vary his activities throughout the day, to minimize job-related travel, and to schedule doctors' visits as needed.

■ "A backpay award should make the claimant whole, that is, to place him in the position he would have been in but for discrimination." *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983). An award of backpay "is ordinarily a presumptive entitlement of a plaintiff who successfully prosecutes an employment discrimination case," *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1171, *amended*, 97 F.3d 833 (6th Cir.1996), and "[a]ny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer." *Rasimas*, 714 F.2d at 628.

[2] In the context of a backpay award, this Court finds that the question of Plaintiff's ability to work after having taken FMLA leave is analogous to the one posed when a court considers the possible application of the after-acquired evidence doctrine, which is enunciated in *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Under the after-acquired evidence doctrine, "[w]here an employer can show that it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies for discrimination are limited." *Thurman*, 90 F.3d at 1168. "In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern for the relative moral worth of the parties, but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." *Nashville Banner*, 513 U.S. at 361, 115 S.Ct. 879 (quotation omitted).

■ For the after-acquired doctrine to apply, a court must first determine whether a plaintiff committed certain acts and whether the plaintiff would in fact have been terminated for such acts in the absence of discrimination. *See Nashville Banner*, 513 U.S. at 362–63, 115 S.Ct. 879.

Of course, in the present case, Plaintiff is accused of no wrongdoing. Rather, here, the first question is whether Plaintiff was so incapacitated by his continuing serious health condition after his FMLA leave that he could not perform an essential function of his previous position or an

equivalent one. The second question is whether Defendant would in fact have terminated him for taking more leave than is permitted under the FMLA.

Similar to the Supreme Court in *Nashville Banner*, the Court here does not intend to punish Plaintiff for his continuing serious health condition. Rather, the Court intends to recognize the Congressional purpose, in enacting the FMLA, of accommodating the legitimate interests of employers in the usual course of business, *see* 29 U.S.C. § 2601(b)(3), one of which would be the termination of an employee who has exceeded leave granted him by the FMLA.

■ The first question is therefore whether Defendant has met its burden of showing that Plaintiff could not return to his old position or an equivalent one on July 22, 1997, 12 weeks and a day after he took FMLA leave, because the continuation of his serious health condition rendered him unable to perform its essential functions. The Court finds that Defendant has.

First, it is undisputed that at least as of April 29, 1997, the day Plaintiff applied for short term disability, Plaintiff could not perform the essential functions of his job because of a serious health condition. Plaintiff could not perform his job because of a venous insufficiency in his right leg and because of pain resulting therefrom. (Ex. 10.) Plaintiff maintained at the damages hearing that the pain and the condition of his legs never improved until his surgery, which was well after his FMLA leave had run. Thus, his ability to return to work must likewise have remained unchanged.

■ Second, in his February 24, 1998 application for Social Security disability, Plaintiff swore to the following under oath: "I want to continue my work in the laboratory. However, I cannot do that job or any other with my legs like they are." (Ex. 35 at 7.) Statements made in an application for Social Security disability benefits are relevant to a determination of a person's ability to work. *See Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376, 383 (6th Cir.1998). Since Plaintiff testified at the damages hearing that the condition of his legs at this time was about the same as during the summer of 1997, this representation corroborates the above evidence that Plaintiff could not return to work on July 22, 1997.

Third, Plaintiff never informed Defendant that he had been released by a physician to return to work, even though Plaintiff was requested to do so on June 17, 1997. (Ex. 13.) Instead, Plaintiff impliedly acknowledged his continuing serious health condition by submitting a long term disability application on July 17, 1997, five days before the running of his FMLA leave. (Ex. 33.)

■ Given the Court's finding that even had the retaliation not occurred, Plaintiff's continuing serious health condition would have prevented Plaintiff's reinstatement in his old position or in an equivalent one, Defendant must still show that it would in fact have terminated Plaintiff for taking leave exceeding 12 weeks. That Defendant would have terminated Plaintiff for taking more leave than permitted under the FMLA is implicit in the jury's determination that Defendant discharged Plaintiff for taking leave which was less than that permitted under the FMLA. If Defendant fired Plaintiff for taking less than two weeks of leave, Defendant would certainly have dismissed Plaintiff for taking over twelve weeks of leave. Therefore, the Court finds that Defendant would in fact have terminated Plaintiff for taking more leave than permitted under the FMLA because of his continuing serious health condition.

While Plaintiff is generally entitled to an award of backpay, based on the Court's findings above, the Court holds that the backpay award should be limited to the pay Plaintiff would have received during his twelve weeks of FMLA leave.

■ Plaintiff's FMLA leave ended July 21, 1997, but Plaintiff continued to receive all of his pay and benefits through September 6, 1997. The Court finds that this tolls any backpay award due Plaintiff under 29 U.S.C. § 2617(a)(1)(A)(i). Moreover, since Plaintiff is not entitled to any backpay, it is not appropriate to award prejudgment interest or liquidated damages. *See* 29 U.S.C. § 2617(a)(1)(A)(ii) & (iii).

■ Under the FMLA, the Court may also award "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision." *Freeman v. Pitts*, 503 U.S. 467, 487, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992).

In this case, the Court finds that the purposes of the FMLA would be frustrated if an employer could escape from all liability for a retaliatory discharge under § 2617(a)(1) simply because it has shown that the employee could not have returned to work after having taken FMLA leave. Defendant's unlawful retaliation remains as an affront to the Congressional intent in enacting the FMLA—to give employees a statutory right to temporary leave for medical reasons without fear of reprisal. If only to promote the deterrence function of this discrimination statute, Defendant's illegal retaliation must be redressed. The Court chooses to do so by an exercise of the statutory grant of equitable power.

Therefore, it is ORDERED that Plaintiff be reinstated to the same position he previously held or to an equivalent position with Defendant. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 557–558, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (equitable relief must be "consonant with the legislative scheme"). If Defendant does not restore Plaintiff to his previous position, Defendant is ORDERED to first offer Plaintiff any new position with comparable pay, benefits, responsibility, authority, and working conditions, including privileges, perquisites, and status, to those which Plaintiff enjoyed immediately prior to his wrongful termination. If Plaintiff declines the first three positions offered by Defendant, either party may petition the Court for a hearing.

Until such time as Plaintiff accepts a comparable position, and until Plaintiff's 65th birthday, Defendant is ORDERED to pay Plaintiff front pay. *See Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir.1998) (holding that front pay, as an alternative or complement to reinstatement, is an equitable remedy available under the FMLA); *see also Shore v. Federal Express*, 42 F.3d 373, 377–78 (6th Cir.1994) The parties are directed to submit briefing on the appropriate amount of front pay which should be awarded.

In finding that backpay is essentially precluded but reinstatement and front pay are appropriate, the Court reaches the opposite result as in *Nashville Banner*, but for the same reasons. There, the Supreme Court weighed the purposes of the ADEA, including that of deterrence, with the legitimate interests of the employer. *See Nashville Banner*, 513 U.S. at 358–60, 115 S.Ct. 879. In an instance of serious wrongdoing by an employee, the Court found it "pointless" to order reinstatement and front pay when the employer could and would discharge the employee on lawful grounds. *Id.* at 362, 115 S.Ct. 879. However, in part to promote deterrence, the Supreme Court left open the possibility of back pay. *See id.*

In the case sub judice, reinstatement or front pay is not pointless because there has not been established a current legitimate interest for Defendant to dismiss Plaintiff. As a result of surgery that he had in the latter part of 1998, Plaintiff no longer suffers from a continuing serious health condition. In addition, Defendant

cannot discharge him for this lawsuit or for his earlier FMLA leave, both of which are protected activities under the FMLA. *See* 29 U.S.C. § 2615. With the FMLA's goal of deterrence adequately addressed by the equitable relief of reinstatement or front pay, the Court may analyze the question of legal damages in terms of the economic injury suffered as a result of the retaliation and by balancing the rights of the employee with the needs of the employer. *See* 29 U.S.C. §§ 2601(b), 2617(a)(1)(A).

Plaintiff also claims the availability of compensatory damages for emotional distress under the FMLA. Plaintiff cites a Sixth Circuit case for the proposition that "the legislative history of the FMLA reveals that Congress intended the remedial provisions of the FMLA to mirror those in the [Fair Labor Standards Act of 1938 ('FLSA'), 29 U.S.C. §§ 201–219]." *Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 644 (6th Cir.1998) (finding a right to a jury trial to determine damages under the FMLA). Plaintiff then observes that certain courts have held that compensatory damages for emotional distress are available under the FLSA. *See Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219 (7th Cir.1995); *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108 (7th Cir.1990). From this, Plaintiff extrapolates that such damages must also be available under the FMLA.

■ However, the express language of the damages section of the FMLA does not contemplate compensation for emotional distress. *See* 29 U.S.C. § 2617(a)(1)(A). Plaintiff cites no case directly in support of his contention. This Court will join the long line of federal district courts holding that damages for emotional distress are not recoverable under the FMLA. *See, e.g., Harper v. Hospital Serv. Dist. No. 1 of Tangipahoa Parish*, No. Civ.A 97–3391, 1999 WL 58835, at *1 (E.D.La.1999); *Godwin v. Rheem Mfg. Co.*, 15 F.Supp.2d 1197, 1209 (M.D.Ala.1998); *Settle v. S.W. Rodgers, Co., Inc.*, 998 F.Supp. 657, 666

(E.D.Va.1998); *McAnnally v. Wyn South Molded Prods., Inc.*, 912 F.Supp. 512, 513 (N.D.Ala.1996); *Lloyd v. Wyoming Valley Health Care Sys., Inc.*, 994 F.Supp. 288, 291 (M.D.Pa.1998); *Dawson v. Leewood Nursing Home, Inc.*, 14 F.Supp.2d 828, 834 (E.D.Va.1998); *Vicioso v. Pisa Bros., Inc.*, No. 98 CIV 2027(RWS), 1998 WL 355415, at *4 (S.D.N.Y. July 1, 1998); *Churchill v. Enterprises*, No. CIV.A. 97–3527, 1998 WL 254080, at *6 (E.D.Pa. Apr.17, 1998); *Szabo v. Trustees of Boston Univ.*, No. Civ.A. 96–10806–GAO, 1998 WL 151272, at *6 (D.Mass. Mar. 18,1998).

### Plaintiff's Relief for the Alleged Bad Faith Affidavit

■ The Court next considers Plaintiff's claim for sanctions pursuant to Federal Rule of Civil Procedure 56(g) for Defendant's alleged bad faith submittal of an affidavit by Richard Thesing in support of its first motion for summary judgment. Before discussing this issue, the Court recounts the chronology of events leading to Plaintiff's claim.

On October 2, 1998, Defendant filed a motion for summary judgment in this matter. In support of the motion, Defendant filed an affidavit of Richard Thesing, Plaintiff's supervisor. In that affidavit, Thesing averred under oath to the following: "After making the decision to terminate Mr. Rogers, Rogers advised the company that he was under a doctor's care for a condition for which he had been previously treated." (Thesing Aff. at ¶ 10.) In its memorandum in support of its motion, Defendant communicated the holding of the case *Carrillo v. National Council of the Churches of Christ in the United States*, 976 F.Supp. 254 (S.D.N.Y.1997), stating that "the court awarded an employer summary judgment where its decision to terminate an employee was made before, but implemented after, the employee went on leave." (Def.'s Mem.Supp.Sum.J. at 22–23.) Clearly, then, Defendant realized the importance of the timing of its decision to terminate Plaintiff. In fact, that issue

would have been determinative of Plaintiff's FMLA claim, since Plaintiff could not have proven retaliation for taking FMLA leave absent a showing that the decision-maker knew that leave was being taken. Thesing's representation, if taken at face value, would have foreclosed any possibility of Plaintiff's retaliation claim.

Plaintiff filed a motion for an extension of time in which to respond to the motion for summary judgment on October 29, 1998. In his supporting memorandum, Plaintiff stated: "Thesing's affidavit establishes that he was involved in the decision to terminate plaintiff's employment." (Pl.'s Mem.Supp.Ext. at 1.) Plaintiff requested further time in which to take Thesing's deposition.

On November 6, 1998, a telephone conference was held in this matter. Defendant's counsel, Christopher Bacon, Esq., contended that Plaintiff did not need Thesing's deposition testimony in order to respond to Defendant's motion for summary judgment. Bacon argued that the Plaintiff should file a timely response and supplement his response if a fact issue arose after having taken Thesing's deposition. After a further discussion, the Court denied Defendant's motion for summary judgment for reasons unrelated to Plaintiff's FMLA claim and mooted the need for Plaintiff to respond to the motion.

Thesing's deposition was taken in December, 1998. The following exchange occurred between Plaintiff's counsel and Thesing during the redirect examination of Thesing:

Q: The question is, did you or did you not know, will you concede that you knew [Plaintiff] was applying for short term ·disability when you made the decision [to terminate Plaintiff], will you concede that, Mr. Thesing?

A: Yes.

Q. You knew at the time you made the decision to terminate his employ-

ment that he was applying for short term disability?

A. I either knew or I mean the timing may have been a day either way looks like from the best I can recollect the events and timing.

Q. The timing is real important, the timing is real important. Did you or didn't you know, will you concede that you knew?

A. That I knew what?

Q. That Mr. Rogers was applying for short term disability at the time you and Deborah and Dennis decided to fire him?

A. I would say that is true.

Thesing Dep. at 162.

At that point in Thesing's deposition, the redirect examination of Thesing ended and the re-cross examination began with the following exchange between Bacon and Thesing:

Q: So you did know that he was applying for short term disability at the time that the decision to terminate him was made?

A: I would say that is true.

Thesing Dep. at 163.

Defendant filed a second motion for summary judgment on December 31, 1998 which was similar to the first. Defendant continued to state the holding of the *Carrillo* case in support of its argument that the Court should grant Defendant's motion for summary judgment on Plaintiff's FMLA claim. (Def.'s Mem.Supp.2d Sum.J. at 14.) However, Defendant removed any reference to Thesing's affidavit in its argument on Plaintiff's FMLA claim, and instead cited Plaintiff's deposition testimony in which he admitted that he was informed before going on short term disability leave that his job was being considered for elimination. (Def.'s Mem.Supp.2d Sum.J. at 14.) It is undisputed that the decision to eliminate Plaintiff's position and the decision to discharge Plaintiff

were separate decisions. (Def.'s Trial Br. Damages at 19.)

On January 11, 1999, Thesing, while under oath, submitted amendments to his deposition testimony. Thesing changed his answers to the deposition questions quoted supra to either "I don't know" or "I don't recall."

On February 1, 1999, Plaintiff responded to Defendant's second motion for summary judgment. The Court denied Defendant's motion as to Plaintiff's FMLA claim, finding that neither party applied the appropriate evidentiary analysis in its submittal to the Court.

At trial, Thesing admitted that the decision to terminate Plaintiff was made after Thesing knew that Plaintiff had applied for short term disability. The jury found in favor of Plaintiff on his claim that Defendant retaliated against him for taking leave protected by the FMLA, which finding is the basis for all of the damages previously discussed in this Order.

Federal Rule of Civil Procedure 56(g) states:

> Affidavits Made in Bad Faith. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Fed.R.Civ.P. 56(g).

Based on personal knowledge, Thesing made a representation on a crucial issue which was favorable to Defendant, his employer, but which was later found to be false. *See Acrotube, Inc. v. J.K. Financial Group, Inc.,* 653 F.Supp. 470, 478 (N.D.Ga. 1987) (imposing Rule 56(g) sanctions for submitting affidavit flatly at odds with facts indisputably within affiant's knowledge).

Events subsequent to the presentment of Thesing's affidavit confirm to the Court that this representation was not a simple mistake. At best, the affidavit contained a highly reckless representation of an important fact by Defendant's agent which representation Defendant never sought to expunge from the record despite subsequent notice as to its falsity. At worst, it was a deliberate and calculated misrepresentation abetted by counsel and designed to thwart justice and prevent a fair resolution of this case. Wherever the truth lies between these two extremes, the Court is satisfied that Thesing's affidavit, submitted in support of Defendant's first motion for summary judgment, was presented in bad faith.

The Court directs Plaintiff to submit to the Court the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorneys' fees, within ten days of entry of this Order.

### Conclusion

For the reasons stated above, for Defendant's retaliation against Plaintiff for taking FMLA leave, the Court ORDERS Defendant to reinstate Plaintiff in his former position or an equivalent position, and further ORDERS Defendant to pay Plaintiff front pay until such reinstatement occurs or until Plaintiff's 65th birthday. The parties are directed to submit briefing on the appropriate amount of front pay which should be awarded.

In addition, for Defendant's presentment of an affidavit in bad faith in support of a motion for summary judgment, the Court directs Plaintiff to submit to the Court the amount of the reasonable expenses which the filing of the affidavit caused Plaintiff to incur, including reasonable attorneys' fees, within ten days of entry of this Order.

SO ORDERED.