Bradley J. BUSCHER, individually and on behalf of the Revocable Trust of Bradley J. Buscher, Appellant (A08–1803), Respondent (A08–2036),

Childress, Duffy, Goldblatt, Ltd., Appellant (A08–2036)

v.

MONTAG DEVELOPMENT, INC., et al., Defendants,

William Zimmerman d/b/a Bill Zimmerman's Stucco Co., Respondent,

Dan DeMars d/b/a Dan DeMars Construction, a/k/a DeMars/Weisz Co., Respondent,

and

Dan DeMars d/b/a Dan DeMars Construction, a/k/a DeMars/Weisz Co., Third–Party Plaintiff,

v.

Sharratt Design & Company, LLC, Third–Party Defendant.

Nos. A08–1803, A08–2036.

Court of Appeals of Minnesota.

Aug. 4, 2009.

Samuel L. Hanson, Briggs and Morgan, Minneapolis, MN; and Timothy Earle Branson, Dorsey & Whitney, LLP, Minneapolis, MN, for appellant/respondent Bradley J. Buscher.

David F. Herr, JoLynn M. Markison, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for appellant Childress Duffy Goldblatt, Ltd.

Louise A. Behrendt, Garth J. Unke, Stich, Angell, Kreidler & Dodge, P.A., Minneapolis, MN, for respondent Zimmerman's Stucco.

Deborah C. Eckland, Goetz & Eckland, P.A., Minneapolis, MN, for respondent Dan DeMars Construction.

Considered and decided by HUDSON, Presiding Judge; KALITOWSKI, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

Appellant Bradley J. Buscher challenges the district court's grant of summary judgment to respondents William Zimmerman and Dan DeMars on his claims of negligent construction, arguing that genuine issues of material fact preclude summary judgment. Appellant also challenges the district court's orders awarding sanctions and costs to respondents. Appellant Childress, Duffy, Goldblatt, Ltd. (appellant law firm) challenges the district court's award of sanctions against it. Finally, respondent DeMars asserts by notice of review that the district court abused its discretion by refusing to award as a sanction the cost of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

his motion to exclude one of appellant's experts.

Because appellant's claim is time-barred under Minn.Stat. § 541.051, subd. 1 (2008), because the award of costs is just, reasonable, and supported by the record and because the district court did not abuse its discretion by awarding sanctions against appellant and appellant law firm, we affirm.

## FACTS

This matter began as a lawsuit to recover damages for negligent construction during the remodeling of appellant's [1] Minnetonka home. Only two of the original defendants remain in this appeal: respondent Dan DeMars, d/b/a Dan DeMars Construction, and respondent William Zimmerman, d/b/a Bill Zimmerman's Stucco Company. Appellant law firm, which was ordered to pay sanctions, is part of this appeal following consolidation of its action with the underlying action by order of this court dated December 3, 2008.

Appellant hired various contractors and subcontractors, including respondents, to remodel his home; construction occurred between 1996 and 1998. In approximately 2002, appellant experienced a series of water-related problems: leaks in a skylight, water in a chimney, deterioration in the stucco of some decorative columns, discoloration of some exterior stucco, and roof ice dams. Each of these problems was repaired. Also in 2002, appellant's wife and children experienced ongoing physical problems seemingly caused by environmental factors.

Appellant hired McGregor Pearce, an indoor-air-quality expert, to assess the air quality in the home. On June 3, 2002, Pearce provided appellant with a written report; appellant testified that he also discussed the report with Pearce. Pearce conducted a mold sampling of the home, concluding that "results are mostly within the normal range." Pearce also stated that mold levels were elevated in two bedrooms and in the basement carpet, and several of the levels exceeded what Pearce considered to be safe. Pearce indicated that the type of mold found is associated with "damp building materials and finishes." He found "no obvious evidence of a serious envelope problem related to the stucco finish," but he also noted that "stucco wall failure often does not produce elevated mold levels until the wall system is almost completely decayed." He suggested cleaning the carpets and using the central vacuum. Pearce did not do an invasive investigation, such as removing sheetrock, in the affected areas.

In May 2004, appellant discovered a major water leak in the master bedroom and hired Berg Exteriors to perform an infrared thermal imaging of his home. This showed evidence of water between the exterior and interior walls. Appellant hired seven investigative firms to assess the damage. Extensive water damage and mold was discovered. The various experts concluded that the problem was caused by defective construction during the remodeling, primarily related to the stucco and windows. Appellant and his family left the home and were told not to return until the problems were corrected.

Appellant hired appellant law firm and local counsel and served an amended complaint on the various contractors in February 2006. Pursuant to discovery requests, appellant produced almost 4,000 pages of documents. These documents were provided to one defendant, Pella Windows, and all other defendants agreed to contact

---

1. The title to the home is held by the Revocable Trust of Bradley J. Buscher; appellant appears both individually and on behalf of the trust.

Pella to review documents. The Pearce Report was produced in this collection, but it was incorrectly "Bates-stamped"[2] during the document indexing process. Appellant's answers to interrogatories referred to the Pearce Report, but did not give the date of the report and referred respondents to a series of other Bates-stamped documents that did not include the Pearce Report. These Bates-stamped documents included all the reports that appellant had received from those experts who investigated the house in 2004. Nothing in the answers to interrogatories revealed that the Pearce Report had been issued two years earlier. Respondents reviewed the entire production of documents but failed to discover the Pearce Report until September 2007.

On June 27, 2007, appellant provided an affidavit to supplement his deposition testimony. In that affidavit, appellant stated: "In April 2002, I had my home tested for mold by McGregor Pearce, an indoor air quality investigator. Mr. Pearce told me that the results from his mold sampling were within the normal range and that he saw no evidence of a building envelope water intrusion problem." Appellant did not mention that Pearce issued a written report.

On July 17, 2007, respondents moved for summary judgment, alleging that appellant's claim was barred by Minn.Stat. § 541.051, subd. 1 (2006), because the claim was brought more than two years after appellant discovered the injury. During the motion hearing, respondents' counsel argued that appellant's consultation with Pearce put appellant on notice of the injury but stated that appellant had

never produced the Pearce Report, despite appellant's counsel's claim that it had been produced. The district court ordered appellant to provide a copy of the Pearce Report to the court and to respondents under cover of affidavit. Appellant did not comply with this order, and the district court never received a copy of the report. The district court denied respondents' motion for summary judgment.

Respondents moved to certify the question of whether appellant's claim was time-barred to this court. During this process, respondent DeMars' counsel discovered the written Pearce Report and submitted it with her responsive memorandum. After the district court received the Pearce Report, the district court sua sponte vacated its order denying summary judgment and granted summary judgment in favor of respondents, concluding that appellant's claim was time-barred.

On November 29, 2007, appellant moved to vacate summary judgment under Minn. R. Civ. P. 60.02, claiming to be "surprised" by the Pearce Report. As part of this motion, appellant offered new affidavits from appellant, Pearce, and Daniel Scudder, who regularly cleaned appellant's carpets. Appellant offered Scudder's affidavit to show that after the Pearce Report, in June 2002, Scudder checked for mold at appellant's request and found none. Before ruling on appellant's motion, the district court ordered Scudder to appear and testify. The district court further ordered all parties, their attorneys, and agents to have no contact with Scudder. The district court stated that it was concerned about the credibility and accuracy of the affidavits filed by appellant because of the

2. A Bates stamp is "a self-advancing stamp machine used for affixing an identifying mark, usually a number, to a document or to the individual pages of a document." To Bates-stamp is "to affix a mark, usually a number, to the individual pages of a document for the purpose of identifying and distinguishing it in a series of documents." *Black's Law Dictionary* 172 (9th ed. 2009).

earlier affidavits filed and the missing Pearce Report.

On January 9, 2008, Scudder appeared and stated that appellant's secretary called him, told him that he should have an attorney, and dropped off copies of some of the affidavits at his home. The district court thereafter ordered appellant to be sequestered during Scudder's testimony. Scudder testified that he had lifted the carpet adjacent to the pool entrance and found no mold there. Scudder also testified that appellant had not told him about the Pearce Report or that high levels of mold were discovered in several rooms. Scudder stated that appellant asked him to check for mold at the entrance from the pool, because of traffic from the pool. This testimony did not fully support appellant's October 15, 2007 affidavit filed in support of his rule 60 motion, in which appellant suggested that Scudder lifted the edges of the carpet throughout the basement.

On February 8, 2008, respondents moved for sanctions pursuant to Minn. R. Civ. P. 11, 37.02, and 56.07, and allowed appellant 21 days to withdraw or correct affidavits and memoranda. Appellant filed amendments suggesting that his affidavit was based on an oral conversation with Pearce, not the written report, and that any error was due to a layman's interpretation of the report. Appellant also submitted an amended affidavit from Scudder, in which Scudder stated that he had checked other areas of the home for moisture, but he had not lifted the carpet in those areas.

On March 4, 2008, the district court denied appellant's rule 60 motion and reentered summary judgment in favor of respondents. The next day the district court held a hearing on respondents' request for sanctions. The district court issued an order on April 22, 2008, imposing sanctions pursuant to rules 11 and 56.07, and the inherent power of the district court, but deferred a determination of the amount of the sanctions until a further hearing. The district court also ordered appellant and appellant law firm to show cause why they should not be subject to criminal contempt. By amended order of May 19, 2008, the district court referred the issue of criminal contempt to the county attorney.

On July 23, 2008, the district court ordered appellant and appellant law firm to pay as a sanction attorney fees of $24,059.50 to respondent DeMars and $13,702.25 to respondent Zimmerman, representing a portion of respondents' trial preparation time and the time spent on the sanctions proceedings. The district court further ordered appellant law firm to pay a $10,000 "penalty" to the Hennepin County District Court for the court's time spent on unnecessary issues due to the bad-faith representations of appellant and appellant law firm. In its October 6, 2008 order, the district court entered judgment on its previous orders and awarded respondent DeMars $63,060.63 and respondent Zimmerman $16,676.61 in costs and disbursements.

Appellant filed a notice of appeal on October 17, 2008. Respondent DeMars filed a notice of review, alleging district court error for failure to award fees incurred in his challenge to one of appellant's expert witnesses. Appellant law firm filed a notice of appeal of the sanctions on November 24, 2008. This court consolidated the appeals on December 3, 2008.

## ISSUES

I. Did the district court err by granting summary judgment in favor of respondents, based on its conclusion that appellant's cause of action was time-barred by Minn.Stat. § 541.051, subd. 1 (2008)?

II. Did the district court abuse its discretion by imposing sanctions against appellant pursuant to Minn. R. Civ. P. 56.07?

III. Did the district court abuse its discretion in the award of costs to respondents?

IV. Did the district court abuse its discretion by imposing sanctions against appellant law firm pursuant to Minn. R. Civ. P. 11.03?

V. Did the district court abuse its discretion by refusing to award respondent DeMars his costs and attorney fees related to his motion to exclude one of appellant's expert witnesses?

## ANALYSIS

### I. *Summary Judgment*

Summary judgment must be granted if, based on the entire record before the court, there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. This court reviews de novo the district court's determination of whether a genuine issue of material fact exists. *Brookfield Trade Ctr. v. County of Ramsey,* 609 N.W.2d 868, 874 (Minn.2000). The moving party must show that there is no issue of material fact, when the evidence is viewed in the light most favorable to the nonmoving party. *Id.* But the party opposing summary judgment must show the existence of a material fact by sufficient evidence and cannot simply rely on its pleadings. *Id.*

■■■ The district court granted summary judgment based on Minn.Stat. § 541.051, subd. 1(a), which states:

Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, ... arising out of the defective or unsafe

condition of an improvement to real property, shall be brought against any person performing or furnishing ... observation of construction or construction of the improvement ... more than two years after discovery of the injury.

"[A] cause of action accrues upon discovery of the injury." *Id.,* subd. 1(c). "When reasonable minds can differ about when the injury was discovered, summary judgment is inappropriate because the issue should be left to the trier of fact." *Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.,* 715 N.W.2d 458, 472–73 (Minn.App.2006), *review denied* (Minn. Aug. 23, 2006).

The district court found that the Pearce Report, issued in June 2002, put appellant on notice of an injury or that the injury could have been found with due diligence and therefore concluded that appellant's cause of action was time-barred. The question for this court is whether there are genuine issues of material fact about when appellant knew or should have known of the existence of an injury, a question this court reviews de novo.

■■■ The two-year limitations provision of Minn.Stat. § 541.051, subd. 1(a), "begins to run when an actionable injury is discovered, or, with due diligence, should have been discovered, regardless of whether the precise nature of the defect causing the injury is known." *Dakota County v. BWBR Architects, Inc.,* 645 N.W.2d 487, 492 (Minn.App.2002), *review denied* (Minn. Aug. 20, 2002). In opposing summary judgment, Dakota County made an argument similar to appellant's position here: the county argued that the leaks it experienced prior to engaging an expert to thoroughly assess a building were minor and were repairable or repaired, and therefore the county was not on notice of an injury. *Id.* We rejected that argument, stating that the record as a whole would not "per-

mit any rational trier of fact to conclude that Dakota County was not aware of an injury." *Id.*

The following evidence was produced by appellant and is not seriously disputed: (1) in 2002, a series of problems occurred, including, water damage to the stucco on two decorative pillars that appellant describes as "not structurally connected to the home," water in the chimney flashing, minor discoloration of some of the stucco, damp insulation, ice dams on the roof, and frost damage to the concrete slab at the pool house; (2) appellant's wife and daughters were suffering from illnesses that made appellant question air quality in the home; (3) because of this, appellant hired an indoor-air-quality expert, McGregor Pearce, to analyze the home; and (4) appellant met with his architect in April 2002 and their discussions included the potential for mold.

The district court was persuaded that the Pearce Report, issued in June 2002, put appellant on notice of an injury. The Pearce Report includes statements that mold values "are mostly within normal range" and are "not alarmingly high," opines that the high mold numbers could be the result of vacuuming, and suggests that appellant use the central vacuum system and get his carpets cleaned and inspected. But the Pearce Report also states that (1) elevated levels were discovered in two bedrooms and the basement; (2) his inspection was meant to model occupant exposure, rather than measure mold growth hidden behind finished surfaces such as walls; (3) he was concerned because some of the results were higher than safe levels; and (4) two of the molds found, *Penicillium* and *Aspergillus*, are "more common indicators of damp building materials and finishes." One of the worst areas was near the damaged decorative pillars, which the Pearce Report stated "may be indicative of a moisture problem in the concrete slab in this area." The Pearce Report further stated:

I find no obvious evidence of a serious envelope problem related to the stucco finish on your home. As I told Mr. Polchow, stucco wall failure often does not produce elevated mold levels until the wall system is almost completely decayed, as the interior dry wall is protected by the plastic vapor barrier. Mold problems usually appear first when the wetting extends into the subfloor assembly, and mold develops under the carpet pad.

Appellant argues that Scudder's testimony that he checked under the carpet and found no mold effectively rebuts the suggestion that he should have been aware of an injury at this point. But Scudder testified that he had not been told about the Pearce Report or instructed to examine the carpet for mold, beyond the pool entrance area that was known to be damp because it was the entrance from the pool. In its March 4, 2008 order affirming summary judgment, the district court rejected appellant's argument and stated that

[t]he basis for summary judgment was that [appellant] was on notice of an actionable injury reasonably related to a construction defect. The combination of multiple water intrusion incidents *and* the elevated mold levels in the Mold Report *and* the location of some of the worst mold near the exterior columns that had leaked and discolored and had peeling paint and were noted to be indicative of a moisture problem, along with other comments in the Mold Report indicating consistency with damp building materials, was the basis for granting summary judgment.

The court also stated that

[t]here is no good authority that limited investigation, such as that made by Mr.

Scudder, should be the lynchpin of notice of an injury. Though this initially seemed to be a close case, when summary judgment was originally considered, it no longer seemed close after the [Pearce Report] was made available. The [Pearce Report] carries the case into the realm of notice of a significant injury, likely related to construction defects. That [appellant's] own air quality expert did not suggest destructive testing (i.e., wall invasion) is not determinative of the issue.

This court has rejected summary judgment based on the statute of limitations when the party responsible for the injury represents to the injured party that repairs will be made and the defect will be corrected, but fails to do so. *Lake Superior Ctr. Auth.*, 715 N.W.2d at 473. Reliance on such representations, if reasonable, will toll the statute of limitations under the theory of equitable estoppel. *Id.* That is not the situation here.

Likewise, this court reversed dismissal of claims of faulty construction and remanded for trial, concluding that the issue of whether a property owner received proper notice of systemic plumbing defects was a fact issue for trial. *Lake City Apartments v. Lund–Martin Co.*, 428 N.W.2d 110, 112 (Minn.App.1988), *review denied* (Minn. Oct. 19, 1988). The property owner had installed a pressure-reducing valve that appeared to correct the problem for almost two years. *Id.* This court concluded that summary judgment was inappropriate because reasonable minds could differ about when the injury was discovered—when the original leaks occurred or when the subsequent more serious leakage caused the property owner to have the plumbing system evaluated. *Id.*

Conceivably, were he confronted only with minor leakage and water problems, appellant could have assumed that repairs

in 2002 had corrected the problems; but a fair reading of the contemporaneous Pearce Report put him on notice of a potentially greater problem. In 2002, appellant considered the issue of mold, having raised the question with his architect and having hired Pearce to analyze the house. The report, while it may tend to minimize the mold problem, does not appear calculated to assuage the fears of a homeowner suspicious of the presence of mold. This matter is similar to *Hyland Hill North Condo. Ass'n v. Hyland Hill Co.*, 549 N.W.2d 617, 619 (Minn.1996), in which a condominium association was aware of roof leaks long before a "deluge" caused it to seek a professional inspection. There, the supreme court concluded that early repairs undertaken to end the leaks provided the condominium association notice of injury; the later replacement of the roof was just a "different remed[y] for the same injury, namely defective construction." *Id.* at 621. It is important to remember that the standard is not whether the injured party knew of the injury, but that the injured party, with due diligence, should have been aware of the injury. *Dakota County*, 645 N.W.2d at 492.

In 2002, appellant not only was apprised of the existence of mold, he also undertook a series of repairs that revealed shoddy construction, including improper ventilation and insulation on the roof, wet insulation in the attic, and water-stained stucco and chimney leakage from improper flashing. Appellant cited these same conditions in his complaint in support of his claims against respondent DeMars, so at the very least appellant was aware of negligent construction in 2002. Viewing the facts in the light most favorable to him, appellant knew or should have known of the injury in 2002, and no rational trier of fact could conclude that he was unaware of the inju-

ry. The district court did not err by granting summary judgment.

## II. *Sanctions against Appellant*

■ Appellant argues that the district court improperly awarded sanctions against him. The district court's sanction order states that it is "premised primarily on Minnesota Rule of Civil Procedure 56.07."[3] Rule 56.07 states:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule [Rule 56 Summary Judgment] are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party submitting them to pay to the other party the amount of the reasonable expenses which the filing of the affidavit causes the other party to incur, including reasonable attorney fees, and any offending party or attorney may be adjudged guilty of contempt.

■ This court reviews de novo the district court's interpretation of court rules. *Shamrock Dev., Inc. v. Smith,* 754 N.W.2d 377, 382 (Minn.2008).

Although there are no published Minnesota cases addressing rule 56.07, the language of the rule is identical to Fed. R.Civ.P. 56(g). Rule 56(g) is interpreted to require either bad faith or intent to delay. *See, e.g., Winterrowd v. Am. Gen. Annuity Ins.,* 556 F.3d 815, 826 (9th Cir. 2009) (affirming lower court's order denying rule 56(g) sanctions in apparent absence of bad faith); *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 349 (5th Cir.2007) (affirming district court's denial of rule 56(g) sanctions because no finding of bad faith and thus denial was not an abuse of discretion); *Klein v. Stahl GMBH & Co. Maschinefabrik,* 185 F.3d

98, 110 (3d Cir.1999) (remanding to district court to consider whether submitting two contradictory affidavits was bad faith within the meaning of rule 56(g)); *Rogers v. AC Humko Corp.,* 56 F.Supp.2d 972, 981 (W.D.Tenn.1999) (remanding for rule 56(g) sanctions for submission of false or reckless affidavit); *Hunt v. Tektronix, Inc.,* 952 F.Supp. 998, 1010 (W.D.N.Y.1997) (refusing to award rule 56(g) sanctions for attorney "road-map" affidavit, concluding it was not submitted in bad faith). The common theme in these cases is bad faith or lack thereof, as determined by the lower court in its discretion.

The district court here cited two affidavits as objectionable. First, the district court found that appellant's affidavit of June 27, 2007, was carefully tailored to omit reference to the existence of a written report, clearly mirrored the language of the written report while asserting that it was based on an oral discussion with Pearce, and intentionally misquoted the Pearce Report by omitting key words. The district court found that these misrepresentations or omissions were exacerbated by the failure to attach the report to appellant's affidavit, the careful use of language to make it appear that the affidavit was based solely on an oral conversation, the failure of appellant's counsel to produce the report after a direct oral order of the court, and the reference to an incorrect Bates number. The district court denied respondents' motion for summary judgment based on appellant's interpretation of the Pearce Report in his affidavit and reversed this decision once the Pearce Report was received by the court.

Second, the district court found the Scudder affidavit, which was drafted by appellant's counsel, objectionable, because it was carefully worded to imply that Scud-

---

**3.** The court also premised its order on Minn. R. Civ. P. 11.03 and its inherent authority, but we conclude that sanctions against appellant were appropriate under rule 56.07.

der's investigation was much more extensive than it actually was. This affidavit was submitted with appellant's motion for vacation of the district court's summary judgment order.

The district court rejected appellant's argument that his affidavit represented just a layman's interpretation of what he had been told by Pearce. The district court noted that appellant's attorneys were experienced; the report was available; and the attorneys surely understood the significance of the report but chose to deliberately conceal it. In its sanction order, the district court stated:

> [Appellant] made misrepresentations and his attorneys permitted the misrepresentations to be made in [appellant's] affidavit and then carried them through to their memorandum opposing summary judgment. All of this caused unnecessary additional motions, and imposition on the Court's time. The undersigned and his law clerk spent substantial hours each time this case came before the Court. Initially, those hours were based on incorrect factual information, and later substantial additional hours were based on submission of correct information, the Pearce Report, which ultimately came not from [appellant] or [appellant's] counsel, but from [respondent] DeMars, who belatedly discovered the Pearce Report in the voluminous document production.

These findings are similar to those made in *Rogers*, where defendant's employee submitted two affidavits, the first favorable to defendant but ultimately found to be false. 56 F.Supp.2d at 982. There, the court concluded:

> At best, the affidavit contained a highly reckless representation of an important fact by Defendant's agent which representation Defendant never sought to expunge from the record despite subse-

quent notice as to its falsity. At worst, it was a deliberate and calculated misrepresentation abetted by counsel and designed to thwart justice and prevent a fair resolution of this case.

*Id.* The court concluded that this was evidence of bad faith. *Id.*

Based on the record before us, the district court did not abuse its discretion by ordering appellant to pay respondents' attorney fees incurred because of interposition of the objectionable affidavits. *See Klein*, 185 F.3d at 110 (awarding attorney fees for violation of rule 56(g)).

### III. *Costs*

■ Appellant asserts that the district court's award of costs to respondents was excessive. The court awarded respondent DeMars $28,373.54 and respondent Zimmerman $10,851 for expert witness fees. Because there was no trial, no expert witness testified.

■ We review the district court's award of costs and disbursements for an abuse of discretion. *Kellar v. Von Holtum*, 605 N.W.2d 696, 703 (Minn.2000). A judge may award just and reasonable fees for any witness "summoned or sworn and examined" as an expert. Minn.Stat. § 357.25 (2008). The district court is permitted to tax costs for pretrial preparation time. *Lake Superior Ctr. Auth.*, 715 N.W.2d at 483.

■ The district court made the following findings to support its award of expert witness fees: (1) appellant hired 21 experts to support his position in this complex case; respondents hired three, all of whom were qualified; (2) one of respondents' experts made site visits, reviewed documentation, obtained repair estimates, and made a report; (3) this expert's rate of $95 per hour and his total charge of $10,195 was reasonable; (4) respondent

DeMars' second expert also reviewed multiple documents, made site visits, and prepared reports; (5) this expert's hourly rate of $205 and overall charge of $18,178.54 was reasonable; and (6) respondent Zimmerman's expert's charge of $10,851 was appropriate. The district court noted that respondents were required to do investigative trial preparation in order to make dispositive motions and it would be "misplaced" to deny these costs because the matter was resolved by summary judgment. These findings provide an adequate factual basis to support the amount of costs awarded. Further, appellant offers no legal basis for his argument that these costs are excessive. *See State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn.App.1997) (declining to address issue based on mere assertion of error and unsupported by argument or authority). We therefore affirm the district court's award of costs.

## IV. *Sanctions against Appellant Law Firm*

■ Appellant law firm argues that the district court did not have the authority to impose a penalty against it. Appellant law firm asserts that the $10,000 assessed by the court is in the nature of a criminal sanction, that the district court's action appears to be criminal contempt, which is not prosecuted by the district court, and that the district court did not afford appellant law firm due process and the various procedural protections inherent in the criminal process. Finally, appellant law firm argues that the fine is not commensurate with the actions that the court found objectionable.

"Courts also have long been held to possess inherent authority to impose sanctions on attorneys practicing before them ... [upon a] finding of bad faith." 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 11.09 (4th ed. 2002). This power is in addition to the sanctions set forth in rule 11; the court may impose any reasonable sanction "to control litigation and is not confined to the use of its contempt power." 1 *Minnesota Practice* § 11.10. "Due process requires that the parties and attorneys receive notice of such potential sanctions and a hearing." *Id.* The district court's decision to impose sanctions is reviewed for an abuse of discretion. *Gibson v. Coldwell Banker Burnet*, 659 N.W.2d 782, 787 (Minn.App.2003).

Rule 11 permits sanctions when a party or an attorney asserts claims or defenses not warranted by existing law or made to harass, delay, or needlessly increase the cost of litigations, frivolous claims, or allegations unsupported by factual evidence.[4] Minn. R. Civ. P. 11.02. Sanctions may be imposed against either a party or an attorney. Minn. R. Civ. P. 11.03. When the district court considers against whom to impose a sanction, it should consider whether "the violation is primarily a professional dereliction." 1 *Minnesota Practice* § 11.8. A sanction under this rule is limited to what is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Minn. R. Civ. P. 11.03(b). Besides reimbursement for attorney fees, the court can order the offending party to "pay a penalty into court." *Id.*

■ Rule 11 requires that a separate motion be made for sanctions and that the offending party be afforded a "safe har-

---

**4.** The district court also cited rule 56.07 and its inherent authority as a basis for awarding sanctions against appellant law firm. We decline to address these additional bases for awarding sanctions because we conclude that rule 11 provides an appropriate basis for an award of sanctions.

bor" of 21 days in which to correct the offending conduct. Minn. R. Civ. P. 11.03(a). Here, respondents served a motion on February 8, 2008, alleging a violation of rule 11; appellant amended the affidavit within 21 days; and the district court held a hearing on the motion on March 5, 2008 and allowed appellant law firm to argue against the imposition of sanctions. Appellant law firm was thus afforded the basic procedural safe harbor protections of rule 11. *See Uselman v. Uselman*, 464 N.W.2d 130, 143–44 (Minn. 1990) (setting forth minimum procedural requirements for rule 11 sanctions).

Rule 11.03(b) permits the district court to order a penalty payment to the court as a sanction for a violation of rule 11. Rule 11 is calculated to deter conduct, but even *Uselman*, which sets forth standards for imposition of sanctions under rule 11, contemplates that "in very unusual circumstances [it will] be permissible for the trial court to wait until the conclusion of litigation to announce that sanctions will be considered or imposed." 464 N.W.2d at 143. Here, the district court imposed the sanction at the end of litigation; although appellant law firm was afforded a safe harbor period, the district court noted that

> [appellant's] attempt to cure the errors in the submissions ... does not cure the harm that has caused the unnecessary expenditure of court time and attorney time in responding to his previous misrepresentations ... Rule 11 safe harbor procedures should not be required to advise an attorney not to make intentional misrepresentations to the court ... But even if sanctions are awarded under Rule 11.02, safe harbor provisions would not seem to apply to the kind of intentional misconduct that occurred here.

The district court found that appellant law firm (1) "represent[ed] itself to have particular expertise in mold cases, and undoubtedly knew that the inferences they permitted to be created in their papers opposing summary judgment, were inaccurate"; (2) "intentionally .incorrectly 'paraphrased' the language of the Pearce Report"; (3) "affirmatively misrepresented the results of that study"; and (4) violated Minn. R. Prof. Conduct 3.3(a)(1) (stating that a "lawyer shall not knowingly ... make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"). These findings are supported by substantial evidence in the record. Further, in light of the costs and fees incurred by respondents because of appellant law firm's actions, the penalty imposed by the district court is reasonable. We therefore conclude that the district court did not abuse its discretion by imposing a sanction on appellant law firm.

## V. Costs and Disbursements: Notice of Review

■ By notice of review, respondent DeMars challenges the district court's denial of $9,330.10 in fees and costs related to his motion to exclude one of appellant's expert witnesses, Thomas Irmiter. In the district court's sanction order of July 23, 2008, the district court refused to allow fees for the Irmiter motion, stating that the motion "might have been unnecessary." And "was unsuccessful in any event."

■ We review the district court's award of sanctions and attorney fees under an abuse of discretion standard. *Gibson*, 659 N.W.2d at 787 (sanctions); *Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn.1998). Respondent brought the motion to exclude Irmiter's testimony before it was certain that Irmiter would testify. The district court did not abuse its discre-

tion by refusing to award costs and fees for the Irmiter motion, which may have been unnecessary.

## DECISION

Because appellant's cause of action against respondents is time-barred by Minn.Stat. § 541.051, subd. 1, we affirm the district court's summary judgment in favor of respondents. The district court did not abuse its discretion by imposing rule 56.07 sanctions against appellant and rule 11.03 sanctions against appellant law firm or in its award of costs and disbursements. We therefore affirm.

**Affirmed.**